IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS JOSEPH FERGUSSON,                        Civil No. 06-1585-HU

       Petitioner,                         FINDINGS AND RECOMMENDATION

  v.

SHARON BLACKETTER,

       Respondent.


MARC SUSSMAN
Attorney at Law
1906 S.W. Madison Street
Portland, OR  97205

    Attorney for Petitioner

HARDY MYERS
Attorney General
JONATHAN W. DIEHL
Assistant Attorney General
1162 Court Street, N.E.
Salem, OR  97301

    Attorneys for Respondent

1- FINDINGS AND RECOMMENDATION -

HUBEL, Magistrate Judge.

Petitioner, an inmate in custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. He challenges his sentencing as a dangerous offender, alleging he was denied the effective assistance of counsel. For the reasons set forth below, Petitioner's Amended Petition for Writ of Habeas Corpus (#24) should be denied and this proceeding dismissed.

## BACKGROUND

In 1999, Petitioner was charged in a four count indictment with Kidnapping in the First Degree (Count 1), Rape in the First Degree (Count 2), and Sodomy in the First degree (Counts 3 and 4). (Respt.'s Ex. 102.) On August 9, 1999, a jury found Petitioner guilty on Count 4, not guilty on Counts 1 and 3, and was unable to reach a verdict on Count 2. (Respt.'s Ex. 109, 4.) The court ordered a pre-sentence investigation ("PSI") and the State indicated it would seek dangerous offender treatment. (Respt.'s Ex. 111.)

Petitioner was sentenced on August 30, 2000, approximately a year after his conviction. At the sentencing hearing, Petitioner had new counsel and counsel conceded that the state had shown enough to depart upward, but he argued there were insufficient grounds for sentencing Petitioner as a dangerous offender.

2- FINDINGS AND RECOMMENDATION -

(Respt.'s Ex. 103, 6-8.)  Despite counsel's argument, the court sentenced Petitioner as a dangerous offender under Or. Rev. Stat. § 161.725(a) to 30 years imprisonment, with 100-months minimum under Or. Rev. Stat. § 137.700, Oregon's mandatory minimum statute.  (Respt.'s Ex. 101, 3.)

Petitioner directly appealed his conviction, but the Oregon Court of Appeals affirmed on Respondent's Motion for Summary Affirmance, and the Oregon Supreme Court denied review.  *State v. Fergusson*, 181 Or.App. 664, 47 P.3d 555 (2002), *rev. denied* 334 Or. 632 (2002).

In 2003, Petitioner sought state post-conviction relief ("PCR"), alleging he received ineffective assistance of counsel at sentencing when counsel failed to raise *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to challenge imposition of a dangerous offender sentence based on findings made by the court and not by a jury.  Petitioner argued there was "no legitimate reason for reasonable counsel to fail to object to the imposition of the 30 year sentence . . ." and "counsel's failure to raise the issues [in *Apprendi*] reflected a lack of preparation and understanding of applicable law."  (Respt.'s Ex. 109, 20.)  The PCR trial court denied relief, and Petitioner appealed.

On PCR appeal, after oral argument, the Oregon Court of Appeals requested supplemental briefing on two issues: (1) the

3- FINDINGS AND RECOMMENDATION -

application to Petitioner's case of *State v. Upton*, 339 Or. 673, 125 P.3d 713 (2005) (holding that a trial court has the authority under Senate Bill 528 to submit certain sentence enhancement factors to a jury as required by *Apprendi* and *Blakely v. Washington*, 542 U.S. 296 (2004); and (2) "whether trial counsel's failure to object to the determination of the dangerous offender enhancement facts by the court rather than the jury, on proof less than beyond a reasonable doubt was a form of 'structural error' under the Sixth and Fourteenth Amendments which required no further showing of prejudice." (Respt.'s Ex. 119, 1; Respt.'s Ex. 121.) The Court of Appeals, ultimately, affirmed without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 124, 123.)

In this action, Petitioner raises one claim alleging he was denied the effective assistance of counsel at sentencing when counsel failed to challenge or object to dangerous offender sentencing based on *Apprendi*.[1] (Amended Petition, #24, 7.) He contends "[t]here was no legitimate excuse for reasonable counsel to fail to object on *Apprendi* grounds to imposition of the

---

[1] *Apprendi* announced the following rule: "[o]ther than the fact of a prior conviction, any fact that increase[s] the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added).

4- FINDINGS AND RECOMMENDATION -

dangerous offender sentence[,]" that counsel's failure to raise *Apprendi* "reflected a lack of preparation and understanding of applicable law[,]" and that counsel "failed to make an obvious and meritorious objection. . . ."  (Petr.'s Mem., #25, 10.)

## DISCUSSION

I.   *STANDARDS*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In construing this provision the Supreme Court stated: "[I]t seems clear that Congress intended federal judges to attend with the utmost care to state court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 386 (2000).  "We all agree that

5- FINDINGS AND RECOMMENDATION -

state court judgments must be upheld unless, after the closest examination of the state court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 389. The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). The decision of the state PCR trial court is the basis for review in the instant proceeding.

(1) <u>Contrary to, or unreasonable application of clearly established Federal law</u>

"'Clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Circuit court law may be used as guidance in determining whether a state court decision is an unreasonable application of the law, but not for purposes of determining what the law is. *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004), *cert. denied*, 126 S.Ct. 484 (2005).

A state court decision is "contrary to" clearly established Federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and

6- FINDINGS AND RECOMMENDATION -

nevertheless arrives at a result different from [the Supreme Court] precedent." *Lockyer*, 538 U.S. at 73 (internal quotations omitted).

A state court decision is an "unreasonable application" of clearly established Supreme Court law when "the state court identifies the correct governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert*, 393 F.3d at 974 (citing *Williams*.) The state court's application of law must be *objectively unreasonable*. *Id.* (emphasis added). "Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [the law] incorrectly. An *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002), rehearing denied, 537 U.S. 1149 (2003) (internal citations omitted). "[I]t is the habeas applicant's burden to show that the state court applied [the law] to the facts of his case in an *objectively unreasonable manner*." *Id*. (emphasis added).

(2)  <u>Unreasonable determination of the facts</u>

In reviewing state court decisions, "[A] federal court may not second-guess a state court's fact-finding process unless,

7- FINDINGS AND RECOMMENDATION -

after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004). This is a standard that will be met in few cases. *Id.* at 1000.

    (3)  <u>Law governing claims of ineffective assistance counsel</u>

Generally, *Strickland v. Washington*, 466 U.S. 668 (1987), governs claims of ineffective assistance of counsel. For relief to be granted under *Strickland*, a petitioner must prove 1) that counsel's performance fell below an objective standard of reasonableness and, 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland*, 466 U.S. 687-88. "Not every error that conceivably could have influenced the outcome undermines the reliability of the results of the proceeding" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id*. at 690, 693. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) ("[U]nder the rule of contemporary

8- FINDINGS AND RECOMMENDATION -

assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his choices.").

## II. *ANALYSIS*

Petitioner raises one claim of ineffective assistance of counsel at sentencing based on counsel's failure to raise *Apprendi* when the court imposed dangerous offender sentencing. However, in *Strickland* the Supreme Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir.) (quoting *Strickland*, 466 U.S. at 686), *cert. denied* 546 U.S. 944 (2005). The Ninth Circuit has determined that since *Strickland* did not establish what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law in this context. *Id.*; *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). Thus, the Ninth Circuit has opined, in the noncapital sentencing context it is not possible to show that a state court's adjudication of an ineffective assistance of counsel claim is contrary to or an unreasonable application of clearly established federal law, as is required for habeas relief under § 2254(d)(1). *Davis*, 443 F.3d at 1158.

9- FINDINGS AND RECOMMENDATION -

However, if *Strickland* does apply to Petitioner's claim, despite its noncapital sentencing context, the question for the court is whether the PCR court's adjudication of Petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of *Strickland*. Petitioner argues the PCR court's determination that *Apprendi* did not apply to his sentencing "is contrary to or at least an unreasonable application of clearly established Federal law" and, therefore, no deference is owed the PCR court's decision. (Petr.'s Mem., #25, 15; Petr.'s Reply, #32, 1.) To be very clear, the question of whether Petitioner's sentence was contrary to *Apprendi* is not before the court as it was not preserved for appeal.

A. <u>State adjudication of ineffectiveness claim</u>

To prevail on his claim, Petitioner had to show the PCR court that counsel's representation at sentencing fell below an objective standard of reasonableness and that, but for counsel's deficient representation, dangerous offender sentencing would not have been imposed. In a General Judgment, the Oregon PCR trial court rejected Petitioner's claim, finding that "the question of fact at issue [in dangerous offender sentencing] involves recividism and/or the mental condition of the defendant and is not an element of the charged offense or related to the mens rea of the defendant at the time of the commission of the crime for

10- FINDINGS AND RECOMMENDATION -

which convicted and, therefore, *Apprendi* does not apply and counsel is not ineffective or inadequate constitutionally for failing to raise the issue at the time of sentencing." (Respt.'s Ex. 117, 2.)  Based on the record, I do not find this determination to be contrary to, or an unreasonable application of clearly established federal law at the time of the PCR court's decision, and accordingly, the PCR court decision is entitled to deference.  Further, while *Blakely*, decided two weeks after the PCR court decision, reached a different conclusion about the application of *Apprendi*, *Blakely* is not retroactively applicable to the PCR court's decision.

At the time Petitioner was sentenced, the existence of a severe personality disorder allowed Oregon courts to impose dangerous offender sentencing.[2]  Counsel argued against dangerous

---

[2] Or. Rev. Stat. § 161.725 provided:
    (1) Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exists:

        (a) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another.

11- FINDINGS AND RECOMMENDATION -

offender sentencing asserting the State had "not shown sufficient evidence for the Court to make a finding that [Petitioner] qualifies as a dangerous offender under 161.725[.]"[3] (*Id*. at 42-44.) The sentencing court disagreed, and sentenced Petitioner as a dangerous offender. (*Id*. at 48-50.)

In the PCR trial proceeding, Petitioner argued that with *Apprendi* decided two months prior to sentencing there was "no legitimate reason for reasonable counsel to fail to object to the imposition of the 30 year sentence . . . [,]" and "counsel's failure to raise the issues [in *Apprendi*] reflected a lack of preparation and understanding of applicable law." (Respt.'s Ex. 109, 20.) The State argued that *Apprendi*'s application to the dangerous offender statute was not clear at the time Petitioner was sentenced, and that in *Apprendi* the Supreme Court noted the issue of recidivism was different than the issue it was deciding - sentencing enhancement upon a court finding violation of a separate statute. (Respt.'s Ex. 116, 11-14.) While PCR counsel conceded the application of *Apprendi* to Oregon's dangerous

---

[3]At Petitioner's sentencing hearing, the State presented the PSI report detailing Petitioner's criminal history and presented testimony from a psychologist who concluded Petitioner suffered from a severe personality disorder. Petitioner's attorney cross-examined the psychologist with respect to his determination that Petitioner suffered from a severe personality disorder, (Respt.'s Ex. 112, 17-31), and challenged the psychologist's opinion that Petitioner's personality disorder was severe.

12- FINDINGS AND RECOMMENDATION -

offender statute had not been decided when Petitioner was sentenced, he maintained counsel was deficient for failing to raise *Apprendi*.[4] However, Petitioner did not show that counsel's representation at sentencing fell below objective standards of reasonableness under prevailing professional norms. He did not show, for example, that counsel arguing the State's evidence was insufficient to support the dangerous offender designation fell below professional standards. Nor did he show that around the time of his sentencing other attorneys in Oregon were successfully raising *Apprendi* for similarly situated defendants. Instead, Petitioner's PCR arguments focused on *Apprendi's*

---

[4] PCR counsel stated: "We have a situation where [Petitioner] was convicted of a Class A felony, which carried a maximum sentence of 20 years. [H]e was given an enhancement to 30 years as a dangerous offender based upon factual findings that were made at a standard of proof of less than beyond a reasonable doubt by the sentencing judge . . . which was something that was not pled in the indictment and was not proved to the required proof beyond a reasonable doubt. And it did then result in a statutory enhancement of his sentence beyond that which otherwise would be permissible under the maximum for the crime for which he was convicted. I think that's a situation where *Apprendi* and *Ring* are squarely on point and the sentence, therefore, was subject to challenge. And there was, at that point, although this issue had not been decided by the Oregon courts and the issue of the application of *Apprendi* to the dangerous offender statute had still not squarely been cited by the Oregon courts, it was still, clearly, a significant decision by the United States Supreme Court . . . . [C]ounsel, clearly, had reasonable notice of the decision to raise those objections." (Respt.'s Ex. 116, 10-11.)

13- FINDINGS AND RECOMMENDATION -

application to dangerous offender sentencing, an issue he acknowledged had not been decided by the courts at the time of sentencing. (Respt.'s Ex. 116, 9-18.)

Although Petitioner insisted in the PCR proceedings that the holding of *Apprendi* was clear, and renews that argument here contending counsel's failure to raise *Apprendi* was inexcusable, (Petr.'s Mem., #25, 4-6), the court decisions that followed *Apprendi* highlight the uncertainty of its application to sentencing enhancement statutes until the Supreme Court clarified the meaning of "statutory maximum" in *Blakely*. *See e.g. State v. Dilts (Dilts I)*, 179 Or. App. 238, 39 P.3d 276 (2002), *aff'd* 336 Or. 158, 82 P.3d 593 (2003) (upward departure sentence under sentencing guidelines does not contravene the Sixth Amendment and *Apprendi*), *vac'd and rem'd on other grounds*, 542 U.S. 934 (2004) (remand in light of *Blakely*); *State v. Dilts (Dilts II)*, 337 Or. 645, 651, 103 P.3d 95 (2004 (*Blakely* compels reversal of *Dilts I*); *State v. Sawatzky*, 195 Or.App. 159, 172, 96 P.3d 1288 (2004) ("We conclude, consistently with *Blakely*, that the relevant prescribed 'statutory maximum' under the Oregon sentencing guidelines is the presumptive sentence that the court determines based on the offender's criminal history and crime seriousness score."); *State v. Warren (Warren II)*, 195 Or.App. 656, 666, 98 P.3d 1129 (2004) (dangerous offender sentencing exceeds statutory

14- FINDINGS AND RECOMMENDATION -

maximum allowed under *Blakely*).[5]  And the PCR trial court noted that after *Apprendi* was decided the issue of *Apprendi*'s application to Oregon's dangerous offender statute had come before Marion County courts with the judges deciding, possibly *en banc*, that *Apprendi* did not apply.  (Respt.'s Ex. 116, 18-26.)

Petitioner quotes passages from *Apprendi* in arguing *Apprendi*'s applicability was obvious at the time of his sentencing, (Reply, #32, 6), but in the context of the full opinion, and without the distorting effects of hindsight, the applicability of *Apprendi* to the dangerous offender statute was not clear.  In *Apprendi*, the Supreme Court discussed, rather extensively, judicial discretion in sentencing and stated that the limits of judicial discretion were defined by the statutory limits prescribed by the legislature.[6]  While "clearly

---

[5] *Dilts* challenged an upward departure sentence based on the court finding the defendant's actions were racially motivated; *Sawatzky* challenged an upward departure based on the court finding abuse of trust and harm greater than usual; *Warren II* challenged dangerous offender sentencing.

[6] "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case."

"[O]ur periodic recognition of judges' broad discretion in sentencing - since the 19th-century shift in this country from statutes providing fixed-term sentences to those providing judges

15- FINDINGS AND RECOMMENDATION -

established federal law refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions", *Lockyer*, 538 U.S. at 72, the entire opinion informs the interpretation and application of the holding.  The Court's reference to statutory limits, although not included in the holding, led to conflicting interpretations of the *Apprendi* decision.  It was not until four years later, when the Supreme Court defined "statutory maximums" in *Blakely*, that the applicability to the dangerous offender statute became clear.  *See Blakely*, 542 U.S. at 303-304; *Warren (Warren II)*, 195 Or.App. at 666.

Under *Strickland,* the court's "scrutiny of counsel's performance must be highly deferential" and requires that "every effort be made to eliminate the distorting effects of hindsight." 466 U.S. at 690.  Constitutionally adequate representation does not require that an attorney anticipate changes in the law.  *See*

---

discretion within a permissible range . . . has been regularly accompanied by the qualification that that discretion was bound by the range of sentencing options prescribed by the legislature."

"The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Apprendi*, 530 U.S. at 481-483 (footnotes and citations omitted).

16- FINDINGS AND RECOMMENDATION -

*Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004); *Strickland*, 466 U.S. at 689. Nor does the Constitution require that defense counsel raise every conceivable constitutional claim. *Engle v. Isaac*, 456 U.S. 107, 134 (1982). *Apprendi* was decided just 2 months before Petitioner was sentenced, its application to sentencing enhancement statutes was not obvious, and its application had not been successfully litigated when Petitioner was sentenced.[7] The state PCR court heeded *Strickland*'s charge to courts reviewing ineffectiveness claims to guard against the distorting effects of hindsight, evaluating counsel's performance based on the circumstances at the time of representation, and concluded counsel's representation was not constitutionally deficient for failing to raise *Apprendi* because *Apprendi* did not apply to dangerous offender sentencing. Although the Supreme Court's decision in *Blakely*, two weeks after the PCR court's decision, rendered the PCR court's determination that *Apprendi* did not apply incorrect, that does not alter this court's review of Petitioner's claim. *Blakely* announced a new

---

[7]The court notes this case is distinguishable from *Burdge v. Belleque*, Unpublished Memorandum, 9th Cir. No. 07-35685, August 15, 2008, in which the court faults an attorney for his failure to object to and challenge the constitutionality of an ambiguous Oregon sentencing statute although the Oregon courts had not interpreted the statute. In *Burdge*, statutes similar to Oregon's had successfully been challenged for many years in other states.

17- FINDINGS AND RECOMMENDATION -

procedural rule, not retroactive on collateral review. *Schardt v. Payne*, 414 F.3d 1025, 1036-38 (9th Cir. 2005). Moreover, Petitioner's sentence was within the statutory limits under Oregon law at the time, and counsel could not be expected to anticipate *Blakely's* interpretation of "statutory maximum" and its impact on sentencing enhancements. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

### CONCLUSION

Under *Strickland*, a court may deny a claim of ineffective assistance of counsel if the petitioner fails to prove either the performance prong or the prejudice prong, and the PCR trial court decision to deny Petitioner relief was neither contrary to, nor an unreasonable application of *Strickland*. Accordingly, Petitioner's amended habeas petition (#24) should be denied, and this proceeding dismissed with prejudice.

### SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due February 5, 2009. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

/ / /

/ / /

18- FINDINGS AND RECOMMENDATION -

If objections are filed, a response to the objections is due February 19, 2009, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this __21st___ day of January, 2009.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

19- FINDINGS AND RECOMMENDATION -